**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maggie Jones and Francina Kinnard, | No. CV-20-02145-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court is Defendant's (the "Government") Motion to Dismiss and Motion for More Definite Statement. (Doc. 22.) Plaintiffs filed a Response, (Doc. 25), and the Government filed a Reply, (Doc. 26). Plaintiffs requested oral argument, but the Court declines to hold oral argument, finding that it is unnecessary. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

Plaintiffs filed this suit against the Government seeking redress under the Federal Torts Claims Act, 28 U.S.C. §§ 2671, *et seq.* ("FTCA"). Plaintiffs' Third Amended Complaint ("TAC") alleges Joshua Kinnard was a Marine from 1999 to 2003. (Doc. 20 ¶ 22.) In August 2015, Kinnard became engaged to Maggie Jones. (*Id.* ¶ 27.) Both Kinnard and Jones had children from prior relationships. (*Id.* ¶¶ 23, 26.) On November 30, 2015, the couple had a baby, J.K., together. (*Id.*) In the months and years after J.K.'s birth, Kinnard developed mental health issues. (*Id.* ¶¶ 28–30.) Kinnard's mental health issues grew worse at the start of 2018, and he began talking about suicide attempts, then feigning suicide attempts, and then drinking very heavily. (*Id.* ¶ 34.) The TAC alleges:

> [Kinnard]'s mental health crisis came to a crescendo when he took [Jones] hostage in their home, handcuffing her to a banister and threatening to end her life, then their children's, and then his. Shortly thereafter, Joshua lined up bullets on the family room floor, naming them after [Jones], J.K., R.G., [Jones'] other sons, and the final one for himself.

(*Id.* ¶ 35.) After the incident, Jones—along with family and friends—convinced Kinnard to seek help. (*Id.* ¶ 36.) Eventually, Kinnard checked himself into the Phoenix VA Hospital on February 13, 2018. (*Id.* ¶ 37.)

At the VA Hospital, Kinnard told the intake specialist that he was suicidal and homicidal, (*Id.* ¶¶ 38–39), and Jones informed the practitioners of the same. (*Id.* ¶ 40.) Thus, Kinnard was admitted for a 72-hour hold. (*Id.* ¶ 41.) After being given mood stabilizers, Kinnard informed practitioners that he no longer felt like killing himself. (*Id.* ¶ 42.) The TAC alleges, "After this claim of no more present suicidal ideation, without consulting [Jones] or any of [Kinnard]'s family members for their input, and nearly a full day before the 72-hour safety hold was to expire, [Kinnard]'s practitioners decided to let him go early." (*Id.* ¶ 43.) Jones—who was shocked that the VA decided to release Kinnard so quickly—called the VA and spoke with a nurse about Kinnard. (*Id.* ¶ 47.) She told the nurse that, just days earlier, Kinnard lined up and named bullets after her and her children, and that he was a danger to himself and his family. (*Id.* ¶ 48.) She pleaded with the nurse not to let Kinnard out. (*Id.*) The nurse told Jones that she was not a family member—she was merely a fiancé—therefore she was not allowed to interfere with treatment decisions. (*Id.* ¶ 49.) Thus, 60 hours into the 72-hour safety hold, Jones went to pick up Kinnard from the VA. (*Id.* ¶ 50.)

After he returned from the VA, Kinnard's mental health crisis immediately returned. (*Id.* ¶ 60.) Jones decided to send the kids away to live with friends temporarily and try to save Kinnard on her own. (*Id.*) On February 26, 2018, Jones returned from work to find Kinnard in deep despair, hinting of suicide, and making very little sense. (*Id.* ¶ 61.) That night, Kinnard slipped into their very cold pool for no reason, and Jones called 911. (*Id.* ¶ 62.) Two policemen arrived at the house and were discussing how to help Kinnard in front

of the house, when Jones' friend along with her children, J.K. and R.G., pulled up and parked in front of the house. (*Id.* ¶ 63.) As Jones and the officers continued to talk, Kinnard walked out of his house and towards the driveway where his truck was parked. (*Id.* ¶ 64.) Kinnard opened the door to his truck, started rummaging around, and loudly proclaimed, "Where…is…my…gun." (*Id.* ¶ 65.) He then turned around and pointed a gun at the officers, who shot him down "within feet of Jones, R.G., and J.K." (*Id.* ¶ 66.) Kinnard died from the gunfire. (*See id.* ¶ 68.)

Plaintiffs TAC brings claims for medical negligence, wrongful death, and negligent infliction of emotional distress ("NIED") against the Government. (*Id.* ¶¶ 7–103.) The Government filed a Motion to Dismiss and Motion for a More Definite Statement as to Individual Federal Employee Liability and Dismissed Estate Claim. (Doc. 22.) The Motion to Dismiss argues only that Plaintiffs' TAC cannot meet the elements of a NIED claim under Arizona law. (*Id.* at 1.)

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which—if accepted as true—states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

### III. ANALYSIS

#### A. Motion to Dismiss

##### 1. Negligent Infliction of Emotional Distress Claim

The Government's Motion to Dismiss principally argues that Plaintiffs cannot meet the elements of NIED under Arizona law because Plaintiffs were not within any immediate zone of danger created by the VA practitioners, who Kinnard saw nearly two weeks before the shooting that led to his death. (Doc. 22 at 4.) The Government also argues that there can be no NIED in medical malpractice cases. (*Id.* at 7.) Lastly, the Government contends that Plaintiffs "cannot properly claim a traveling, floating zone of danger." (*Id.* at 10.)

In their Response, Plaintiffs include additional facts which they failed to include in their TAC.[1] Plaintiff notes that they served their Form 95 on the Government and attached

---

[1] For example, Plaintiff's response alleges that when Jones picked up Kinnard from the VA

it to their Complaint. However, this document is not attached to Plaintiffs' TAC. In the Ninth Circuit, amended complaints supersede original complaints, *see Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012), and amended complaints must be complete in themselves and "must not incorporate by reference any part of the preceding pleading, including exhibits," LRCiv 15.1. Therefore, the Court may not consider these factual allegations.

"To state an [NIED] claim arising from witnessing another person's injury or death, a plaintiff must establish that she was within the 'zone of danger,' and 'must prove physical injury resulting from the shock of witnessing injury to a closely related person.'" *State Farm Mut. Auto Ins. Co. v. Connolly ex rel. Connolly*, 132 P.3d 1197, 1200 (Ariz. Ct. App. 2006) (quoting *Duke v. Cochise County*, 938 P.2d 84, 87 (Ariz. Ct. App. 1996)). To prevail on an NIED claim in Arizona, a plaintiff's injury must be "due to the unique experience of having witnessed, at such close range as to be in the 'zone of danger,' the event that caused the injury to the other person." *Id.* at 1203. A successful plaintiff must be "directly affected by the tortfeasor's negligence." *Id.*

Here, Plaintiffs' NIED claim suffers from fatal defects. Notably, the zone of danger as alleged in the TAC was not created by the actions of the VA practitioners. There is merely a tenuous connection between the VA practitioners' release of Kinnard and the shooting that occurred weeks later. Furthermore, as alleged, Kinnard himself failed to take his medication and instigated the shooting by retrieving and pointing a gun at the officers. These were intervening causes of his death. The allegations do not show a direct connection between the incident and the VA's alleged negligence, which is required under Arizona law. *See Connolly*, 132 P.3d at 1203. Moreover, as pointed out by the Government, the incident that led to Kinnard's death occurred weeks after his release from the VA, and the Restatement of Torts is clear that the zone of danger must be immediate. Restatement (Third) of Torts: Phys. & Emot. Harm § 47 (Am. L. Inst. 2012). The facts as

---

after his 60-hour stay, Kinnard "shut the door to her car, turned to her and coldly warned: 'you will never get me back in there.'" (Doc. 25 at 4.)

- 5 -

alleged in the TAC simply do not support an NIED claim under Arizona law.

Plaintiffs' alternative theory for the NIED claim also fails. Plaintiffs' Response contends, "There was a temporal connection between the negligent act (releasing a homicidal and suicidal man to his family) and the trauma (the family receiving back the homicidal and suicidal man)." (Doc. 25 at 5.) However, this theory does not support an NIED claim. Under this theory, the VA practitioners caused no injury to Kinnard, which is required for an NIED claim. *See Connolly*, 132 P.3d at 1203 (requiring that a plaintiff must witness—at close range as to be in the zone of danger—the injury that defendant caused on the third party). Accordingly, this theory fails as well.[2] The Government's Motion to Dismiss Plaintiffs' NIED claim will be granted.

### 2. A.R.S. § 12-2603

Plaintiffs' Response notes that Plaintiffs will voluntarily comply with A.R.S. § 12-2603. Thus, the Court will not address the Government's argument on that point. Thus, Plaintiffs are required to file and serve a certified statement stating whether or not expert opinion testimony is necessary to prove the health care professionals' standard of care or liability for their claims. *See* A.R.S. § 12-2603(A). Additionally, if Plaintiffs certify that expert opinion testimony is necessary, Plaintiffs are required to serve a preliminary expert opinion affidavit with their initial disclosure statement pursuant to A.R.S. § 12-2603(B).

### 3. Estate Claim

As noted in their Response, Plaintiffs have agreed to withdraw any claim by Kinnard's estate. Accordingly, the Court need not address the Government's arguments on this point.

### B. Motion for More Definite Statement

The Government's Motion for a More Definite Statement argues that Plaintiffs fail

---

[2] Even if the allegations attached to Plaintiffs' original Complaint were attached to the TAC, allowing the Court to consider them, Plaintiffs' NIED claim would still fail. Plaintiffs would still fail to show that they witnessed, within the zone of danger, an injury to Kinnard from the VA's alleged premature, negligent release.

to identify all the specific VA employees that are fault as required by the FTCA. (Doc. 22 at 11.) Thus, the Government asks the Court to require Plaintiffs to clarify these claims via a more definite statement.

Plaintiffs' TAC, as currently drafted, contains general allegations against the VA practitioners. For example, paragraph 72 of the TAC states, "As a direct and proximate result of the Phoenix VA healthcare providers breaching the applicable standard of care, the statutory beneficiaries have suffered." (Doc. 20 ¶ 72.) Several other paragraphs in the TAC contain these broad, general, institutional claims against the VA Hospital without reference to the individual employees upon whose conduct the allegations are based. In paragraph 73 of the TAC, Plaintiffs allege that the negligent healthcare providers at the Phoenix VA include, but are not limited to, Carla A. Denham, MD, Himanshu R. Patel, MD, and the VA provider who spoke with Maggie Jones by telephone on the day Kinnard was discharged. (*Id.* ¶ 73.)

The FTCA only authorizes suits against the United States for personal injury or death caused by "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Such employees are defined, in part, as "persons acting on behalf of a federal agency." 28 U.S.C. § 2671; *Adams v. United States*, 420 F.3d 1049, 1050 (9th Cir. 2005). The word "persons," as used in the FTCA, does not include corporations such as the VA Hospital. *See Adams*, 420 F.3d at 1050. Therefore, in the case of medical negligence or malpractice, a plaintiff must identify the specific medical professional, or professionals, liable for his or her claim. *See Tsosie v. United States*, No. CV-18-00494-PHX-SPL, 2019 WL 2476601, at *4 (D. Ariz. June 13, 2019).

Here, as written, the TAC falls short of what is required to plead an FTCA claim against the Government under *Iqbal*. 556 U.S. at 678. Aside from the nurse who spoke with Jones over the phone, the TAC lacks any specificity about which medical professional took which specific actions that allegedly led to Kinnard's injury. Accordingly—instead of requiring Plaintiffs to file a more definite statement—the Court will dismiss Plaintiffs'

TAC with leave to amend to allow Plaintiffs an opportunity to provide more specificity for their factual allegations against the individual practitioners. If Plaintiffs intend to allege claims against additional defendants not currently listed in their TAC, they must include them in their amended complaint.

### IV.  LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation marks omitted) (citation omitted).

Here, it appears that Plaintiffs can cure the lack of specificity in their TAC through amendment. Within fourteen (14) days from the date of entry of this Order, Plaintiffs may submit their proposed amended complaint. Plaintiffs must clearly designate on the face of their amended complaint that it is the "Fourth Amended Complaint." Plaintiffs are reminded that it supersedes the original complaint, *see Lacey*, 693 F.3d 896, and it must be complete in itself and "must not incorporate by reference any part of the preceding pleading, including exhibits," LRCiv 15.1.

### V.  CONCLUSION

The Court will dismiss Plaintiffs' NIED claim. Additionally, the Court will deny the Government's Motion for a More Definite Statement but give Plaintiffs the opportunity to amend their TAC. Accordingly,

**IT IS ORDERED** granting the Government's Motion to Dismiss. (Doc. 22.)

**IT IS FURTHER ORDERED** denying the Government's Motion for a More Definite Statement. (Doc. 22.)

**IT IS FURTHER ORDERED** that Plaintiffs shall filed their amended complaint within fourteen (14) days of the entry of this Order.

Dated this 23rd day of November, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge